I have three documents that I would like to have presented to the court as part of the argument today, if I may. Okay. Well, you can give them to the court, Deputy, and over here, Ms. Tricin, and she'll take care of handing those out, and we'll have them to look at afterwards, so, thank you. Yes, thank you very much, Your Honors. My name is Dwight Jefferson, and it is my privilege to be here today to represent Judith Deeds and David Deeds. As part of my presentation to you today, I've included a photograph of the Deeds. Since we've all probably been in the Sears, or we've all probably seen a Whirlpool refrigerator, I thought that it would be good to introduce the Deeds to you so the court can have an The issues that are before the court today are two. One is that the trial court applied the wrong standard of review in vacating the magistrate's order, granting leave to amend the appellate's complaint to add warranty claims, and the second, that the trial court improperly rendered summary judgment on appellee's statute of limitations defense based upon the lack of due diligence. I would like to take those issues in reverse order, if I might, first addressing the issue of the summary judgment. Appellants raised fact issues regarding diligence in obtaining service of citation sufficient to overcome the summary judgment. Now, in that regard, the plaintiff identified two things, and that is in the original, with the original petition, which was filed in October 17th of 2014, the service of citation was requested. That is in evidence, and the service request of the citation was by certified mail to the Secretary of State. As a result of administrative and maybe clerical errors and miscommunications with the district clerk's office, that original citation was held in the clerk's office because notwithstanding the request form, the district clerk held the original citations for pickup, and they weren't picked up. Subsequent to that, on March 25th of 2015, once it was discovered that the citations had not been properly requested and issued, a second civil process request was filed requesting service through the Secretary of State by certified mail. And then on April 2nd, the citations were prepared, but instead of being directed to the Secretary of State, they were mailed to the attorney's office. And then on June 17th of 2015, the citation was requested a third time, requesting service through the Secretary of State by certified mail. The appellant followed up the June 17th citation request on June 29th, and despite the proper fees being paid, the intake manager there locked the case, basically closed the case. Included with the documents I submitted is the affidavit of Fay Reese, who was the legal secretary who filed the citation request in March and April. And then again, the appellant followed up on June 30th with the clerk's office regarding preparations of the citations. Then again, on July 8th, 2015, Ms. Reese again followed up with the district clerk's office and was told that the citations had not been serviced. And then finally, on July 13th, nearly a month after the third request for citation and submission of the proper fee service was finally had on the defendants. Appellants believe that there is a genuine issue of material fact with regard to the question of due diligence based upon the fact that the plaintiffs have provided a plausible explanation for the delay in obtaining citations. The appellees offered no summary judgment evidence to rebut this explanation and errors in the clerk's office. Whether or not the appellants were diligent in effectuating service is a question of fact for the jury. In that regard, the courts focused their due diligence analysis on lapses without explanations. Explained lapses do not constitute lack of due diligence as a matter of law. The plaintiff is not required to use the highest degree to procure service, but requires the use of, as the court is aware, the degree of diligence that an ordinarily prudent person would use under the same or similar circumstances. As I understand it, so one of the assertions having to do with alleged lack of due diligence is that the office didn't check back to see for some period of time whether service had been effected. What do you respond to that? I don't know to what extent the record reflects it, Judge, but I did inquire of the secretary at the time regarding following up on the service. She indicated to me that she had done that and that the citations had not been served as of yet, and I was under the impression that, in view of the fact that I had requested the service of citation at the time the suit was filed, that that was just a process that was taking its time within the clerk's office. That was my understanding, and it wasn't until it got a little bit later that I started to question whether or not, in fact, or exactly what was going on at the time. Also, what I've included in the documents that I've submitted to the court, Your Honors, is a chronology of the communications between the deeds and the defendants because, as the court is aware, in addition to the statute of limitations being intended to see that the case is prosecuted within a certain period of time, the court has also said that it is also important because the defendants have the right and need to know as soon as possible the claims against them so that they can go out and start accumulating and discovering the evidence that will be necessary to defend the case. What the chronology shows is that the date of the accident was October 21st of 2012, and these documents are all part of the record. On December 6th, Sears sent their tech to the deeds' home who identified the cracked evaporator pan as a problem. On December 12th, a tariff sample with Whirlpool dispute resolution sent a letter to the deeds acknowledging their claim. This is all in 2012. On December 13th, there was a letter to the deeds from Karen Bold of Cedric Claims for Sears to the deeds advising receipt of the notice of their claim and requesting a call regarding Medicare. On December 17th, the repair tech came back and replaced the cracked evaporator pan. On that same date, the 22nd, the deeds emailed Karen Bold with the information regarding Medicare. On December 24th, the deeds completed section one and two of the Medicare request for social security number, health information for Karen Bold with Cedric. On January 2nd, the letter from James Vargo, legal special associate with Whirlpool Law Department advising he's handling their claims. And this is in the 13th. On January 8th, email from deeds to Vargo attaching requested information, the model number, the refrigerator, proof of purchase, copy of repair order, location of product for inspection, photographs, Medicare medical records, and lost wages information, of which there was none because Ms. Deeds has always been a housewife. All of that information was provided to the appellees. It continued. On January 25th, 2013, Mr. Vargo of Whirlpool offered the deeds $2,000 to settle their claim. And through January and February of 2013, there were constant communications, as reflected by the summary, between Mr. Deeds and Mr. Vargo of Whirlpool Legal Department regarding the medical bills and medical notes. Finally, in 2013, Mr. Deeds, after having no success with resolving the claims with Whirlpool, hired an attorney, Robert Lynch. Mr. Lynch communicated with them on January 4th, 2014. Pardon me, on December the 12th, 2013, and then, pardon me, Mr. Lynch first communicated on April the 12th of 2013 with Whirlpool representing the Deeds. And then, Mr. Lynch died on January 4th of 2014. On February 4th, the Deeds were notified in order to appear in probate court, where they were told for the first time of Mr. Lynch's death, and their case was assigned to the law firm of McDonald Whirly by the probate judge. Thereafter, on June the 12th, about four months later, that law firm advised the Deeds, we don't want to accept your case. The Deeds came to my office for the first time in September of, well, in August of 2014, the statute ran in October. I accepted their case in representation on October, pardon me, on September the 15th, approximately four weeks before the expiration of the statute of limitations. At that time, I was in communication with Whirlpool regarding settling the case. As a matter of fact, I responded on November the 11th, 2014, to an email from Anthony Miscellany of Whirlpool Claims Resolution Manager, asking me to provide them with a settlement demand, which I did on November the 19th, 2014, some one month after the case had been filed. I was under the impression that we were in negotiations with Whirlpool, and that the case had been properly responded to. Of note in Mrs. Reese's affidavit, you will see, even after the filing of the proper citation and the payments of the proper fees, that it still required her to remain in constant contact with the clerk's office in order to get the citation served. All right. You've saved time for rebuttal, Mr. Jefferson. Yes. Mr. Wagner. Good morning, Your Honors. May it please the Court, my name is Jason Wagner, and I represent Whirlpool Corporation and Sears, Roebuck & Company in this matter. The District Court's decision dismissing this case in August of 2017 was correct for three reasons. The primary reason that it was correct was because the lack of due diligence in serving the defendants in this case for almost nine months after the statute of limitations ran was not only established in the defendant's motion for summary judgment, but was never properly or appropriately rebutted in the appellant's responses. And there were several responses that were filed in this case. There were a total of three motions for summary judgment that the defendants in the court below filed. The initial motion for summary judgment was filed on the basis of limitations. That was at the time that the case raised claims that had a two-year statute of limitations. That court considered that motion for summary judgment when we presented to the court the state court petition showing the date of injury and the date of filing of the lawsuit, along with the evidence in the state district court's file that showed when citations were issued. And while I don't have the chronology that's been provided to your honors, I can tell you this much, that the evidence in the record, particularly and most importantly the Fay Reese affidavit, which was provided very late in the game, actually after the summary judgment on limitations had been granted and when it was presented to the court in the form of the motion for reconsideration filed by appellants. But taking it at its face value, that shows that it was five months and five days after the statute of limitations ran that Ms. Reese, who was the new secretary for my friend, had determined that there had not been a citation served on either defendant. So there is a gap of about five months from the time that the lawsuit is filed in state district court in Harris County until the time that it's determined that there is no citation or service on the part of the two defendants in this case. Can you help us with understanding the procedure where the citation was being, what were the words, held for pickup or held for delivery, something like that? Yes. How does that work? Well, it's unclear if that actually occurred on this record, Your Honor. There's competing evidence in the record. What we heard initially was that a temporary secretary had paid the wrong service fee at the time of the filing on October the 17th of 2014. And because the wrong service fee was paid, despite the fact that a request for service had been made, the district clerk held on to that citation. Later on, we find out in looking at some of the other documents that the briefing in the court below and in this court indicate that there may never have been a request for service at the time that the lawsuit was filed. So the record is unclear. But essentially, one way or the other, either a correct fee was not paid at the time, only a fee for one defendant's service, not two, was paid, or a request was never made for issuance of citation at the initial time of the filing of the lawsuit. Was it later that there was a request for service, but it didn't go to the Secretary of State? It went to a lawyer? What happened there? That's correct, Your Honor. And again, if we're relying on what the Fay-Reese Affidavit tells us, that is again due to a second assistant to my friend who, again, did not seem to pay the correct fee at the time. And what the Reese Affidavit indicates is that the district clerk did issue a citation, but as she puts it in her investigation after the fact, the citations were placed in the file with no indication of further action having been taken to have them served. And that's that Reese Affidavit in the record 925 and 926. So that admission at that point occurred on April 4th of 2015. And the reason why that date's important, it's five months and 15 days after the statute of limitations ran. So if you're just looking at the two occasions when there's a request for service that's being processed administratively through my friend's law office, then we can see that in the first occasion, either one wasn't requested or the wrong fee was paid or the fee was paid for only one defendant, and no one ever got them, and so they were destroyed. In the second event, which is over five months after the statute of limitations run, it's apparently sent to the office, but they're found in the lawyer's files, nothing having been done to them. And in between the time of filing and that event in early April, there is no activity. There's no diligence whatsoever. There's no effort. There may be intent on the part of counsel to get these defendants served, and he may in fact be communicating with Whirlpool representatives both before and after the lawsuit is filed. But nowhere in those documents, which are in the record at 225 to 248, will you find any indication from my friend that he is telling the Whirlpool representative that a lawsuit has been filed, to be on the lookout for the case. And nowhere will you see the Whirlpool representative indicating, we are aware a lawsuit has been filed, and we will be hiring an attorney to represent Whirlpool and Sears in this case. So, in that instance, you have at least a five-month, five-day gap of no activity whatsoever. And under the cases, Gant and Bowie and Rigo and Lyles, you've got to show that you're exercising ordinary diligence, as an ordinarily prudent person or a lawyer would in this circumstance, in order to toll the statute of limitations. Because the statute doesn't get tolled unless you exercise that due diligence. And here, there was no due diligence exercised. And my friend is right. Ordinarily, that's a fact question. And ordinarily, an excuse is sufficient. But the cases hold, particularly when an excuse is given that is invalid or unreasonable or implausible, even if you offer an excuse in that circumstance, it's insufficient in order to show due diligence. And in that circumstance, the lack of due diligence can be found as a matter of law. Another instance when the lack of due diligence can be found as a matter of law is when the lapses are too great. There's cases that are cited in the record in Texas Supreme Court and intermediate appellate courts that have shorter time periods of delay than the nearly nine-month delay in this case, where either excuses were found to be invalid or where the lapse of time was too long. Those are three months in Boyada and Bowie, five months in Webster and Gonzales, and six months in Allen. So it's the appellee's position in this case that there was simply on this record that at least combined 60 pages of written opinion on this matter, analyzing and setting forth how each party made their argument and presented the evidence, there is ample evidence to indicate not only that the appellees established their right to summary judgment, but that no fact issue could exist on the appellant's efforts in due diligence in order to get service. It was interesting that Judge Harmon noted that this late-arriving affidavit from Ms. Reese was brought in at the motion for reconsideration time in an effort to show and establish that there was some diligence exercised, but she noted that it was ironic because in reviewing the affidavit closely and looking at the timeline, you actually began to see larger gaps in the record where there was no activity. That's in fact how we found out that the citations had been dropped into counsel's file at his office and nothing was ever heard or seen from or followed up on that issue again. So ultimately, when the events in April, when the request is made for the second citations and they're dropped in the file, you've got to look at that gap, too, and see whether the excuses that are offered are reasonable or unreasonable. In this case, they're unreasonable because it takes over two months from the time that the citations are dropped in the file before it's even realized that the defendants have not been served in this case. So we've got the five months at the beginning, and then we've got a two-month period after the citations are received and dropped in the file where nobody's doing anything. And certainly there's nothing in the record to indicate during those times, particularly the two months, that counsel is negotiating or talking with anybody about settlement. With respect to the discussions pertaining to settlement, I will note there's at least three cases that we've cited between the two of us that indicate that ongoing settlement negotiations that occur around the time of the statute of limitations expiring do not extend the statute of limitations, that there's not an equitable argument in the absence of some sort of affirmative misrepresentation. And there wasn't one here. There's not any in the record. I'm referring in particular to the Sharp case and to the Balaza-Gonzalez case, particularly in the Balaza-Gonzalez case that's an intermediate court of appeals. Yeah, I didn't hear Mr. Jefferson's argument that that would extend or toll the statute. I understood him just to be giving us some background on how the case was proceeding. And fair enough, fair enough, Your Honor. I will note in his brief he does make the pitch for some sort of equitable remedy. And so given the presentation that he made and his first part of his argument, I'm, you know, at a disadvantage if he chooses to bring it up in his rebuttal. But nevertheless, there's no legal support in the cases that have been cited on both sides for that kind of equitable remedy or approach. So for those reasons, we believe that the district court made the correct decision, applied the law appropriately in connection with the determination that there was a lack of due diligence as a matter of law to serve the defendants in this case. With respect to the second argument that appellants present, which they did not get to in their initial 15 minutes or so, that they argue that the district court made an incorrect decision and did not follow the law properly in rescinding and vacating the magistrate judge's order that had allowed them to amend their complaint to add warranty claims. And just to give you a brief background, as I mentioned, the lawsuit was filed in state court with a two-year statute of limitation causes of action. We filed a summary judgment against those claims. While that summary judgment was pending and four months after the deadline had expired to amend pleadings, the appellants filed a motion for leave seeking to amend their complaint to add warranty claims, obviously with a four-year statute of limitations. They were trying to avoid the summary judgment that was and should have been clearly granted on the basis of limitations. The motion was referred to the magistrate judge. The magistrate judge considered the motion, considered our response, which objected on various grounds, undue delay, futility, particularly because he hadn't provided precede notice. He didn't have experts in this case in order to make a products liability claim, which is what this case is. Nevertheless, the magistrate judge granted his motion for leave to amend, and that was in a one-page order. The problem with that one-page order, quite frankly, for the district court was that there was no analysis under Rule 16, which governed, particularly because there was a scheduling order in place. There was no showing or analysis or finding of good cause. And secondarily, under Rule 15, there had been no analysis under the principles that are set forth in the Fomen case. Nevertheless, the defendants at that time did not lodge an objection or ask the district court to reconsider that motion for leave at that time. Instead, we continued on the case because we had confidence on the limitations argument, the expert issues, and other issues in the case. At a later date, though, the district court judge takes a look at that magistrate judge's opinion and makes a determination. This is in October of 2016. Makes a determination that that motion had been erroneously granted by the magistrate judge. Now, she did not immediately rescind it at that time. Instead, what Judge Harmon did, after going through an analysis of several pages, was to determine that the proposed complaint failed to meet 12B6 standards. And she allowed the appellants to attempt to re-plead. So the appellants re-pled, and at that time the district court judge made a determination to resolve the case on the order that we're here about today, which was to determine that the decision by the magistrate judge back in June of 2016 had been clearly erroneous based upon all the evidence and argument that had been submitted. In fact, if you take a look at the two-page, seven-paragraph motion to relieve that was filed by appellants, you won't find any arguments in there that relate to good cause or to justify the delay. The only substantive argument that you'll find in there is that the appellants knew about this case or knew about the plaintiff's claims before suit was ever filed. Well, you turn that over on its head and it actually supports the position that the district court reached when it rescinded that magistrate judge's order. And here's why. Because if the defendants at the time knew about the potential warranty claims or the facts upon which the warranty claims were based, then certainly the appellants did, certainly the plaintiffs did, certainly their lawyer did. And so those claims should have been brought when the suit was filed initially in state court at any time before the scheduling order was entered by the district court judge or sooner than four months after the deadline for amendment of pleadings had expired. None of that happened in this case. And the district court analyzed that according to the Southwestern Bell case and determined that good cause was not shown. Good cause to allow that amendment of the pleading did not exist. The magistrate judge's decision in June of 2016 had been erroneously made. Not only had it been erroneously made according to what the evidence in the case was, but it was contrary to law. It was contrary to the application of Rule 16. It was contrary to this circuit's authority on the matter, Southwestern Bell and other cases. And so based upon that, the district court properly determined and exercised its authority under Section 636 and Rule 72 that it could come into the magistrate judge's decision, analyze it, which it did in great detail, and decide that in this case, for the reasons that I provided to you here today and for the reasons the district court did in its order of dismissal, that that motion should not have been granted by the magistrate judge. And given that the motion should not have been granted by the magistrate judge, the district court properly struck that second amended complaint. And since there were no other claims that were in existence at the time of this order in August of 2017 for the district court to consider, other than those which had already been dismissed by the court some months earlier, the district court properly decided to dismiss this case in its entirety. And there's language. It's strong language in that district court's opinion. There's no question about it, about the delay, the dilatoriness, the lack of attention to staff, the lack of attention to the case. It's replete in the record. It's a tough record to overcome for sure. And so we believe that the reasoning from the district court, based upon the cases that I've talked about that we've cited in our brief and that are in the record support affirming the district court's decision on its order and dismissing this case in its entirety. All right. Thank you, Mr. Wagner. Thank you. Mr. Jefferson, you've saved time for rebuttal. Thank you, Your Honor. May it please the Court. With regard to the magistrate's order, as counsel pointed out, the appellees did not object to the magistrate's order within 14 days of the time that it was entered. In addition to that, the magistrate's, under the case of Escobar versus the city of Houston, that case stands for the proposition that since the amended complaint did not require any amendment of the scheduling order, then Rule 15 is a controlling rule with regard to the motion to amend and not Rule 16. Also, I would like to direct the Court's attention to two key cases regarding due diligence, and that's the Sign versus Keller case, which is a Fifth Circuit case, that reversed the district court granting of summary judgment on limitations. The Fifth Circuit held in that case that reliance on miscommunications with the district clerk's office coupled with the failure to observe local rules does not conclusively negate due diligence. The evidence in this case is during that nine-month period of time that counsel has referenced, there were three efforts at getting these defendants served. Most of the cases that are cited here are cases where a suit is filed and nobody requests a citation or service for five months or six months or eight years. There's evidence in this case that over the nine-month period of time that the appellants are complaining about, there were three attempts. Now, whether or not they were effective, whether or not they were bungled, the attempts at service were made. The cases, the cases stand for the proposition that the case I would point you to is Beyela versus Hinojosa. That case stands for the proposition that what you look for is did the party manifest a bona fide intent to serve the defendants. The fact in this case, three attempts over that nine-month period of time to get service at a minimum is evidence of a bona fide intent to get the defendant served. The point that I made with the chronology, Your Honors, is the fact that the defendants were in no way prejudiced. No way prejudiced by the delay. Every bit of information that the defendants received in discovery after the suit was filed, I had produced to Whirlpool's legal department prior to the suit being filed in the, pardon me, right after the suit was filed in the letter, well, prior to the suit being filed, related to the letter that I, the email of November of 2014, a month after the suit was filed, where Whirlpool asked me for a settlement demand. And so the facts are, during that nine-month period of time, whether we were good at it or bad at it, we were trying to get the defendant served. The jury should have the opportunity to review our actions and make the determination, were we acting in an ordinarily prudent manner in trying to get these defendants served, or were we sitting on our hands and doing nothing? That's a question of fact. With regard to the amended complaint, as I stated, it did not require any amendment of the scheduling order, no additional evidence, nothing. That's why the magistrate, Stacy, was correct in her application of Rule 15 amended pleadings and not Rule 16 scheduling orders. Ladies and, pardon me, Your Honors, the deeds have been in many ways mistreated by the civil justice process. The lawyer died. Their case was sent to a law firm by the probate judge who did nothing, nothing for four months. They came to me at the last minute. I attempted to preserve their case and their cause of action because they were entitled to it. We ask this Court for equity, for justice, and not to subject the deeds to the manifest injustice of having their case dismissed. All right. Thank you, Mr. Ferguson. Your case is under submission. Be sure that Mr. Wagner gets copies of what you handed out today. I had misunderstood. I thought you had already given those to him, but he needs those today. Thank you. Thank you.